IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY D/B/A/ METRA,<br><br>Plaintiff,<br><br>v.<br><br>METRO FIBERNET, LLC AND EAGLE 1 RESOURCES, LLC,<br><br>Defendants. | Case No.: 25-cv-15045<br><br>Hon. Jorge L. Alonso, Presiding<br><br>Magistrate Judge Keri L. Holleb |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiff, Commuter Rail Division of the Regional Transportation Authority d/b/a METRA ("Plaintiff" or "Metra"), for its Motion for Temporary Restraining Order and Preliminary Injunction against Defendants, Metro Fibernet, LLC ("Metronet") and Eagle 1 Resources, LLC ("Eagle 1") (collectively, "Defendants"), states as follows:

**INTRODUCTION**

Metra brings this action to stop Defendants' ongoing unlawful trespass and interference with Metra's rail property and operations. Metronet is a telecommunications provider. Eagle 1 acts as Metronet's consultant for the installation of fiber optic cable. Metra is one of the largest commuter rail systems in the United States and provides transportation to thousands of Chicagoans and Illinoisans every day. Defendants have taken the position, with Eagle 1's guidance, that Metronet no longer needs Metra's consent and authorization to install fiber optic cable underneath rail lines on Metra's property. As a result, Metronet is now knowingly trespassing on Metra's property by installing its fiber optic cable underneath active rail crossings without Metra's consent or supervision—and hoping that

Metra does not catch them in the act. In one recent instance, under the cover of darkness at approximately 4:50 AM on September 13 or September 14, 2025, Metronet was observed to be surreptitiously performing boring work as part of an unauthorized fiber optic installation in Ingleside, Illinois near Wilson Road. "Boring" work in this context is essentially drilling into the ground using heavy machinery to create a tunnel that the fiber optic cable can be pulled through underneath the rail lines. Metronet conducted boring work and installed fiber optic cable at this rail crossing (the "Crossing" as defined in the Complaint) without Metra's knowledge, without a Metra flagman present, and without Metra engineering personnel and/or inspectors present. Due to the potential damage to Metra's underground signal lines, among other reasons, these unauthorized installations present enormous risk – including the opportunity for catastrophic harm – to the safety of Metra's passengers and employees, and threaten to disrupt Metra's vital transportation services throughout the region.

Defendants are refusing to comply with Metra's standard procedures and guidelines for the installation of fiber optic cable at rail crossings for one reason only—they do not want to pay Metra the associated fee for using Metra's property. While Defendants acknowledge that *some* compensation is owed to Metra pursuant to the federal Communications Act under 47 U.S.C. § 253(c)[1], they argue that Metra's standard fee is not fair or reasonable. Therefore, Defendants have unilaterally decided that they **will <u>not</u>** (i) pay *any* compensation to Metra for the installation of fiber optic cable on Metra's property, (ii) enter into a License Agreement or Right of Entry Agreement with Metra related to

---

[1] 47 U.S.C. § 253(c) states: "Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government."

1

proposed installations on Metra's property, or (iii) coordinate with Metra to ensure the safety of the public and to prevent transportation disruption during installations at rail crossings owned by Metra. Because Defendants have refused to confirm that they will wait for Metra's consent, authorization, and coordination prior to performing additional installations on Metra's property, Metra was forced to seek judicial intervention through this lawsuit.

This is not the first time that Metra has needed a court order to stop unlawful activity being performed by Eagle 1 and one of its clients. In 2015, Metra sued Eagle 1 and another telecommunications provider, Wide Open West Illinois, LLC (commonly known as "WOW!"), in the Circuit Court of Cook County for the same threatened activity. *See* **Exhibit 1**, Complaint, Motion for Temporary Restraining Order and supporting Memorandum, and TRO Order from the 2015 WOW! and Eagle 1 Litigation. There, WOW! and Eagle 1 notified Metra that they intended to install fiber optic cable under the Milwaukee West District tracks at a rail crossing in Itasca, Illinois, without complying with Metra's standard process for a Right of Entry Agreement. Metra objected to the proposed installation as an unauthorized and unlawful trespass, but WOW! and Eagle 1 notified Metra that they still intended to proceed with the proposed installation and also sent Metra proposed plans to conduct similar installations at four additional Metra rail crossings. In its argument to the circuit court, Metra noted that:

> Boring activity under this active railroad line poses a serious threat to railroad operations and personal and public safety. Any disruption to or interference with the Metra rail lines would negatively impact Metra's ability to provide safe and efficient rail service to Metra's passenger rail customers, thereby causing Metra substantial economic and operational harm.

*Id.*, Metra's Motion for Temporary Restraining Order, ¶ 7. The Circuit Court ruled in Metra's favor and entered a Temporary Restraining Order against WOW! and Eagle 1 to

stop the proposed unauthorized installation. *Id.*, April 3, 2015 Temporary Restraining Order.

Now, Eagle 1 and one of its clients (Metronet) have taken their brazenness one step further. Rather than notify Metra that they plan to proceed with an installation at a specific date and time despite Metra's objections, Defendants are simply proceeding with installations on Metra property *without* notifying Metra when those unauthorized installations are scheduled to occur. For example, Defendants sent Metra a letter on May 20, 2025 notifying Metra of Metronet's intention to install fiber optic cable at the Crossing on or about June 25, 2025. Metra objected to this proposed installation through a letter sent to Defendants on June 4, 2025. The parties exchanged correspondence back and forth, and Metra provided Defendants with the documents they needed to complete (including a Right of Entry Agreement and License Agreement) prior to proceeding with the installation pursuant to Metra's established procedure. Then Metra heard nothing from Defendants. Months later, as detailed in the Complaint, Metronet was observed to be furtively conducting boring work at the Crossing at 4:50 AM on September 13 or September 14, 2025—Metra did not receive any notice that Metronet planned to proceed with an installation on or around that date and time over Metra's objections.

Therefore, Metra seeks the same relief here for purposes of the instant Motion for Temporary Restraining Order and Preliminary Injunction. In sum, Metra seeks to preserve the *status quo* by temporarily restraining Defendants from entering upon or otherwise interfering with Metra's property at rail crossings, including prohibiting Defendants from undertaking any boring or other activities on, above, or under those rail crossings, without Metra's prior express authorization and consent. Given that Metronet was recently observed to be surreptitiously conducting boring work and installing fiber optic cable underneath

3

Metra rail lines in the middle of the night (with Eagle 1 advising Metronet that Metra's consent is not needed for such activity), there is a strong likelihood that Defendants will perform this unauthorized activity again at additional rail crossings unless they are prevented from doing so by court order. Since 2022, Defendants have submitted letters to Metra for the purpose of gaining access to Metra property to have Metronet install fiber optic cable at *nine* separate rail crossings (not including Eagle 1's other clients). Even though Metra objected to each of those proposed installations, Defendants may have already completed installations at those locations without Metra's knowledge or may be planning to complete boring work and installations at those rail crossings (and others) in the immediate future. Since discovering Metronet's unauthorized installation on September 13 or September 14, Metra has exhausted all reasonable efforts to gain Defendants' agreement to refrain from performing installations at rail crossings going forward without Metra's consent, and Defendants have refused to identify additional crossings (apart from the Crossing) where Metronet has installed fiber optic cable without Metra's consent.

## LEGAL STANDARD

The standard for issuance of a temporary restraining order ("TRO") is the same as is required for a preliminary injunction. *Meritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014). In order for a TRO (or preliminary injunction) to issue, a party must make a threshold showing that: (1) it has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm in the interim period prior to final resolution of its claims if the injunction is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Ferrell v. United States Dep't of Hous. and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). Assuming that the moving party establishes these factors, the Court then "balances the harms" to both of the

4

parties that would result from the TRO using a "sliding scale" analysis, while additionally considering the effect that granting the injunction will have on the public. *Girl Scouts*, 549 F.3d at 1086.

## ARGUMENT

Entry of a TRO and/or preliminary injunction is necessary to protect Metra's right to exercise control over its property, enforce its own reasonable guidelines and procedures, and safeguard Metra's commuter rail operations, passengers, employees, and the public. Metra respectfully requests this Court enter a TRO and/or preliminary injunction to prevent the substantial risk of irreparable harm caused by Defendants' unauthorized boring work and installation of fiber optic cable under Metra rail lines without Metra's consent. Absent a TRO, Defendants will likely continue interfering with Metra's property rights by proceeding with installation activities without regard for proper safety requirements and without Metra supervision. Moreover, Defendants may have already damaged Metra's signal lines through unauthorized installations that were not disclosed to Metra—to date, Defendants have refused to disclose the locations of other installations that were performed on Metra's property without Metra's consent. The threats to public safety alone (including the risk of catastrophic injury to the public and Metra's employees) constitute irreparable harm, not even including the potential disruption and delays to Metra's commuter rail operations. The severity of the risk to human life and public welfare is difficult to ascertain and nearly impossible to remedy at law.

### A. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, the moving party need only show that it has a "greater than negligible chance of winning." *AM Gen. Corp. v.*

5

*DaimlerChrysler Corp.*, 311 F. 3d 796, 804 (7th Cir. 2002). "The threshold for this showing is low." *Cooper v. Salazar*, 196 F. 3d 809, 813 (7th Cir. 1999).

Under Illinois law, a trespass occurs when a defendant wrongfully invades or interferes with a plaintiff's interest in the exclusive possession or control of its land. *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 554 (1980); *City of Evanston v. Northern Illinois Gas Company*, 229 F. Supp. 3d 714, 727 (N.D. Ill. 2017). Here, Defendants have not disputed that Metronet conducted boring work and installed fiber optic cable on Metra's property without Metra's consent. Moreover, Defendants have refused to agree to stop installing fiber optic cable on Metra's property going forward without Metra's consent. They have refused to identify the location(s) of all other rail crossings where Metronet installed fiber optic cable on Metra's property without Metra's consent. Defendants' intention to continue unlawful trespass on Metra's property may properly be restrained by the issuance of a TRO and/or preliminary injunction. *See Benno v. Central Lake County Joint Action Water Agency*, 242 Ill. App. 3d 306, 314 (2d Dist. 1993) (holding that "plaintiff's request for a permanent injunction [was] properly supported by allegations that he suffered continuing trespasses").

Defendants' sole argument is that an Illinois statute, 65 ILCS 5/11-42.11.1(f), permits Metronet to install fiber optic cable on Metra's property without Metra's consent and without payment of a standard fee. Defendants have argued, without support, that Metra's license fees are "exorbitant" and "have the effect of prohibiting [Eagle 1's clients] to provide any interstate or intrastate telecommunications service." *See* **Exhibit 2**, Eagle 1 Correspondence to Metra dated November 5, 2025. Yet, 47 U.S.C. § 253(c) permits Metra, as a unit of local government, to "require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis" for

6

their use of Metra's property. Metra applies the same fee to any telecommunications company seeking to install fiber optic cable under Metra rail lines—its license fees are competitively neutral, nondiscriminatory, fair, and reasonable. Defendants did not pay *any* fees to Metra prior to installing fiber optic cable at the Crossing (and presumably at other rail crossings throughout Illinois).

Even accepting Defendants' position for the sake of argument that 65 ILCS 5/11-42.11.1(f) applies to Metra, Defendants did not comply with that statute in many material respects prior to entering upon Metra's property without Metra's knowledge. As explained in the Complaint, in every instance since 2022 where Defendants notified Metra of a proposed Metronet installation at a rail crossing, Metra objected to the installation being completed prior to the execution of a Right of Entry Agreement and License Agreement. Metra notified Eagle 1 and Metronet in each instance that the proposed installation, if performed without Metra's consent and coordination, would create a dangerous condition threatening the safety of the public and the safety of its employees and threatening to cause an interruption of the furnishing of vital transportation. Still, Metronet ultimately proceeded with the installation at the Crossing (and likely at other rail crossings), presumably after receiving advice and guidance from Eagle 1, and surreptitiously performed unauthorized construction at an active rail line in the middle of the night—without Metra's consent, knowledge, or coordination. As such, Defendants' activities on Metra's property clearly constitute a trespass.

Metra highlighted Defendants' faulty interpretation of 65 ILCS 5/11-42.11.1(f) in a letter to Defendants' counsel on November 18, 2025, and again demanded that Defendants confirm Metronet would *not* proceed with installations on Metra's property without Metra's consent. *See* **Exhibit 3**, Metra Letter to Defendants dated November 18, 2025. Defendants'

7

counsel did not respond to the letter. The text of 65 ILCS 5/11-42.11.1(f) states that, once the "rail" has notified the community antenna television company in writing that the proposed entry and installation "would create a dangerous condition threatening the safety of the public or the safety of its employees or threatening to cause an interruption of the furnishing of vital transportation," *the burden is on the community antenna television company* to apply for a ruling to the Illinois Commerce Commission in the event it disagrees with such determination. Importantly, according to the statute:

> **an initial written determination of a** public utility, **railroad**, or pipeline owner or operator timely made and transmitted to the community antenna television company or municipality, in the absence of a determination by the Illinois Commerce Commission Transportation Division, in accordance with the Commission's Rail Safety Program, or a court of competent jurisdiction finding to the contrary, **bars the entry of the community antenna television company…upon the real estate or right of way for any purpose**.

*Id*. (emphasis added). To Metra's knowledge, the Defendants never applied for a ruling to the Illinois Commerce Commission prior to Metronet performing unauthorized installations on Metra's property (and have given no indication they will do so in the future). Thus, among other reasons, Defendants were in violation of 65 ILCS 5/11-42.11.1(f) (even when accepting Defendants' argument that this statute applies to Metra), and their installation activity on Metra's property constitutes an unequivocal and unlawful trespass.

### B. Irreparable Harm and No Adequate Remedy at Law

Harm is irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017). And an "[i]nadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (citing *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir. 1985)). Courts have

repeatedly held that trespasses constitute harms for which injunctive relief is the appropriate remedy. *See, e.g., Texas v. United States Department of Homeland Security*, 123 F. 4th 186, 212 (5th Cir. 2024) ("[w]hen a trespass is continuous such that stopping it would require a multiplicity of suits, an injunction is justified because monetary relief is inadequate").

Courts also routinely hold that disruptions to rail operations cause irreparable harm both because of the resulting loss of goodwill and the expansive network of interests rail carriers typically serve. *See, e.g., Ill. Cent. R.R. Co. v. Bhd. of Maint. of Way Employees*, No. 14 C 3989, 2015 WL 518677, at *6 (N.D. Ill. Feb. 5, 2015) (finding that "[e]ven a temporary shutdown" of a railroad would have "dire consequences" and harm "countless communities, businesses, and utilities that rely heavily on rail traffic," and that "any disruption in service would result in permanent and irreparable loss of goodwill and the future business"); *Long Island R.R. Co. v. Int'l Ass'n of Machinists*, 874 F.2d 901, 906 (2d Cir. 1989) ("[T]he cessation of plaintiffs' rail operations would result in immediate and irreparable injury to them in the form of economic losses
and the loss of good will not compensable in monetary damages."); *Bhd. of Maint. of Way Employees v. BNSF Ry. Co.*, No. 03 C 6247, 2003 WL 22844242, at *5 (N.D. Ill. Nov. 26, 2003) (finding irreparable harm due to "major disruptions in both the transportation of goods . . . and the disruption of at least part of the public transportation system used by several thousand individuals").

Threats to public safety also constitute irreparable harm. Importantly, while the alleged harm "must be more than a mere possibility," it does not require that the harm "be occurring or be certain to occur before a court may grant relief[.]" *Michigan v. U.S. Army Corps. of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). This is particularly true when the consequences of the potential harm are great. *See, e.g., Bhd. of Maint. of Way Employees v.*

9

*BNSF Ry. Co.*, No. 03 C 6247, 2003 WL 22844242, at *5 (N.D. Ill. Nov. 26, 2003) (finding that safety issues creating a risk of rail disruptions and possibly derailment constituted irreparable harm); *State of Oh. ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987) (finding sufficient irreparable harm even with a "concededly small" risk because the "potential severity [was] enormous"); *J.D. ex rel. Devantier v. Sherman*, No. 06-4153-CV-C-NKL, 2006 WL 3163053, at *7 (W.D. Mo. Oct. 27, 2006) (finding irreparable harm because a patient "face[d] a *meaningful risk* of serious injury or death" (emphasis added)); *Save Our Summers. v. Wash. State Dept. of Ecology*, 132 F. Supp. 2d 896, 905 (E.D. Wash. 1999) (finding irreparable harm because "wheat stubble burning" threatened to aggravate certain respiratory ailments).

Here, Defendants' unauthorized activities not only pose severe disruptions to Metra's rail operations, but also pose grave public safety risks. For example, if Metra's underground cables are damaged or severed through unauthorized boring work, this would disrupt signal systems that control train movement. Any accident during, or caused by, the unauthorized and unsupervised installation of fiber optic cable on Metra's property could be catastrophic and place human lives at risk. These harms are irreparable and warrant a TRO and/or preliminary injunction.

### C. Balancing of Public Interest

If Metra has made a stronger showing that it will be successful on the merits, the balance of harms need weigh less heavily in its favor. *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018); *see also Roland Machinery Co. v. Dresser Indust., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). In this "balancing phase," "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were

to grant the requested relief." *Valencia*, 883 F.3d at 966. "When conducting this balancing, it is also appropriate to take into account any public interest, which includes the ramifications of granting or denying the preliminary injunction on nonparties to the litigation." *Girl Scouts*, 549 F.3d at 1100. This analysis is "subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id*. (quotes omitted).

Here, Defendants' actions pose serious threats to Metra's operations and the public's safety, whereas Defendants cannot show any immediate need to access Metra's property or disrupt the *status quo*. Any minor inconvenience caused by a delay in Defendants' ability to complete proposed installations on Metra's property is far outweighed by the unnecessary risk and dangers of proceeding with fiber optic cable installations underneath rail lines without Metra's coordination and supervision. The public interest strongly favors an injunction because Defendant's activities threaten public safety and the functioning of Metra's vital transportation services.

Similar to the Complaint, this Motion is supported by affidavits from the following employees of Metra: (i) Scott Schiemann, Chief Engineering Officer at Metra; (ii) Alvin Terry, Manager, Real Estate at Metra; and, (iii) Eric Jagiela, Signal Maintainer at Metra. These affidavits are attached hereto as **Exhibits 4, 5, and 6**, respectively.

## CONCLUSION

For the reasons set forth above and in its Complaint, Metra respectfully requests that this Court grant its Motion for Temporary Restraining Order and Preliminary Injunction. Metra has attached a proposed Temporary Restraining Order as **Exhibit 7** for this Court's consideration. Metra also respectfully requests that this proposed order be entered while awaiting a preliminary injunction hearing. Metra seeks to preserve the *status quo* and asks

11

this Court to temporarily restrain Defendants Metro Fibernet, LLC and Eagle 1 Resources, LLC from entering upon or otherwise interfering with Metra's rail property and related rail operations at any rail crossings owned, operated, or controlled by Metra. In the same vein, Metra asks this Court to prohibit Defendants, and all other entities acting under their control or in concert therewith, from undertaking any boring or other activities on, above, or under those rail crossings, without Metra's prior express authorization and consent. Finally, in order to confirm that Metra's underground signal network has not already been damaged by Defendants' actions, Metra requests that Defendants be ordered to: (i) disclose the location(s) of any rail crossings that they are aware of where Defendant Metro Fibernet, LLC installed fiber optic cable at a rail crossing owned, operated, or controlled by Plaintiff, from January 1, 2020 through present day, without first executing Plaintiff's Right of Entry Agreement and License Agreement, and (ii) disclose the location(s) of any rail crossings where Eagle 1 recommended and/or advised its client(s) that they were permitted to proceed with an installation of fiber optic cable at a rail crossing owned, operated, or controlled by Plaintiff, from January 1, 2020 through present day, without first executing Plaintiff's Right of Entry Agreement and License Agreement.

Dated: December 12, 2025

                                            Respectfully submitted,

**Commuter Rail Division of the Regional Transportation Authority d/b/a METRA**

By: */s/ Thomas J. McDonell*

Christopher N. Skey (ARDC #6243906)
Thomas J. McDonell (ARDC #6317275)
Taylor R. Rioux (ARDC #6350076)
QUARLES & BRADY LLP
155 North Wacker Drive, Suite 3200
Chicago, Illinois 60606
(312) 715-5000
Christopher.Skey@quarles.com
Thomas.McDonell@quarles.com
Taylor.Rioux@quarles.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused a copy of the Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction to be served upon:

| | |
|---|---|
| Allison Rule | Johnny Chuang |
| Marashlian & Donahue, PLLC | Metro Fibernet, LLC |
| The *Comm*Law Group | 11880 College Boulevard, Ste. 100 |
| 1430 Spring Hill Road, Suite 310 | Overland Park, KS 66210 |
| McLean, Virginia 22102 | Email: johnny.chuange@metronet.com |
| Email: adr@CommLawGroup.com | *Senior Corporate Counsel for Metro* |
| *Counsel for Eagle 1 Resources, LLC* | *Fibernet, LLC* |

via email this 12th day of December, 2025.

                                                                  */s/ Thomas J. McDonell*