**EXHIBIT 3**



Quarles & Brady LLP
Attorneys at Law
155 North Wacker Drive
Suite 3200
Chicago, IL  60606
Tel: (312) 715-5000
Fax: (312) 715-5155
quarles.com

Writer's Direct Dial: (312) 715-2713
E-Mail: thomas.mcdonell@quarles.com

November 18, 2025

**VIA USPS OVERNIGHT AND EMAIL**

Allison Rule
Marashlian & Donahue, PLLC
The *Comm*Law Group
1430 Spring Hill Road, Suite 310
McLean, Virginia 22102
Email: adr@CommLawGroup.com

      **RE:    Response to October 22 and November 5, 2025 Correspondence**

Ms. Rule:

      Our law firm has been retained by and represents the Commuter Rail Division of the Regional Transportation Authority, d/b/a METRA ("Metra"). Please direct all future correspondence regarding this matter to me.

      First, as has been explained in many prior letters from Metra to Eagle 1, we disagree with your position regarding the applicability of 65 ILCS 5/11-42.11.1(f) to Metra. Regardless, even if 65 ILCS 5/11-42.11.1(f) applies to Metra (and we maintain it does not), Eagle 1 and Metronet are not following the specific and mandatory procedures outlined in 65 ILCS 5/11-42.11.1(f).

      For example, regarding the Ingleside, Illinois crossing near Wilson Road, Metra sent Eagle 1 a letter on June 4, 2025 in response to Eagle 1's proposed installation letter sent on May 20, 2025. Among other things, the June 4, 2025 letter notified Eagle 1 and Metronet that:

> As previously stated in prior letters, Metra operates hundreds of commuters trains a day along its rail lines and has the obligation to exercise all necessary safety measures to protect the commuting public from any undue risk of injury or great bodily harm. Any unauthorized trespass, especially for construction or fiber optic type installations under the right-of-way, threatens the integrity of the railroad tracks and exposes the commuting public and Metra's employees, as well as unauthorized and unprotected fiber-optic line installers working in proximity to live tracks, to the risk of serious bodily harm. Additionally, JULIE and DIGGER do not

Allison Rule
November 18, 2025
Page 2

perform locates of Metra utilities; these must be coordinated with the appropriate parties within Metra or risk the chance of becoming liable for damaging railroad signal or communication lines and the interruption of passenger service that may result.

In sum, Metra notified Eagle 1 and Metronet that the proposed installation, if performed without Metra's consent and coordination, would create a dangerous condition threatening the safety of the public and the safety of its employees and threatening to cause an interruption of the furnishing of vital transportation. Still, Metronet ultimately proceeded with the installation, presumably after receiving advice and guidance from Eagle 1, and surreptitiously performed unauthorized construction at an active railroad line in the middle of the night—without Metra's consent or coordination.

The text of 65 ILCS 5/11-42.11.1(f) makes it clear that, once the "railroad" has notified the community antenna television company in writing that the proposed entry and installation "would create a dangerous condition threatening the safety of the public or the safety of its employees or threatening to cause an interruption of the furnishing of vital transportation," *the burden is on the community antenna television company* to apply for a ruling to the Illinois Commerce Commission in the event it disagrees with such determination. Importantly, "**an initial written determination of a** public utility, **railroad**, or pipeline owner or operator timely made and transmitted to the community antenna television company or municipality, in the absence of a determination by the Illinois Commerce Commission Transportation Division, in accordance with the Commission's Rail Safety Program, or a court of competent jurisdiction finding to the contrary, **bars the entry of the community antenna television company…upon the real estate or right of way for any purpose**."

Therefore, the decision by Metronet, with Eagle 1's guidance, to surreptitiously move forward with these installations on Metra's property, despite Metra's determination of serious safety risks and vital transportation concerns, is clearly a violation of 65 ILCS 5/11-42.11.1(f). Eagle 1's comment that Metra is "free to petition the Illinois Commerce Commission for a ruling" has it backwards—the burden is on *Metronet* to apply for a ruling to the Illinois Commerce Commission in the event it disagrees with Metra's determination that the proposed installation would create a dangerous condition threatening the safety of the public and of its employees and threatening to cause an interruption of the furnishing of vital transportation. Moreover, Metra mentions necessary coordination in all of its response letters to Eagle 1 and its clients, and 65 ILCS 5/11-42.11.1(f) states that the railroad may deem it appropriate to "supervise, monitor or otherwise assist the community antenna television company in connection with the installation." To the extent Eagle 1's clients are completing any installations while ignoring Metra's request to supervise or monitor the installation, that is another direct violation of 65 ILCS 5/11-42.11.1(f).

Again, Metra does not concede that 65 ILCS 5/11-42.11.1(f) applies, but, even accepting your client's position for the sake of argument, Eagle 1 and its clients are in violation of the requirements of 65 ILCS 5/11-42.11.1(f).

Allison Rule
November 18, 2025
Page 3

Second, I am confused by your claim that a TRO entered by an Illinois state court in 2015 related to the exact same activity performed by one of Eagle 1's clients "has zero precedential value." As you know, Eagle 1 was a named defendant in that case. You point out that the current version of 65 ILCS 5/11-42.11.1(f) was enacted in 2017. I am enclosing a copy of the current version of 65 ILCS 5/11-42.11.1(f) that shows changes to the statute in 2017. There is nothing in the 2017 statute that would have somehow diminished Metra's right to injunctive relief based on the same improper activity by one of Eagle 1's clients.

Finally, we disagree with your contention that Metra's license fees are "exorbitant" and "have the effect of prohibiting [Eagle 1's clients] to provide any interstate or intrastate telecommunications service." Pursuant to 47 USCS § 253(c), Metra's license fees are competitively neutral, nondiscriminatory, fair, and reasonable. Please provide any support you have that suggests Metra's license fees are not fair and reasonable or "have the effect of prohibiting [Eagle 1's clients] to provide any interstate or intrastate telecommunications service." *See, e.g., New Mexico Gas Company v. Board of County Commissioners of Bernalillo County, New Mexico*, 423 F. Supp. 3d 1190 (D.N.M. 2019) (telecommunications services provider failed to show that fee provisions of county ordinance, which required utilities with facilities and equipment in the public right-of-way to pay annual right-of-way use fees or "franchise fees," materially inhibited its provision of telecommunication services). Metra is simply asking Eagle 1's clients to execute a License Agreement and Right of Entry Agreement prior to entering onto Metra's property to ensure the safety of Metra's customers and employees—these are not "onerous procedural hurdles," and it is the same process for every other telecommunications company seeking to install fiber optic cable under Metra rail lines.

Your acknowledgement that some amount of compensation is owed to Metra pursuant to 47 USCS § 253(c) amounts to a damning admission. Eagle 1's clients, including Metronet, are apparently proceeding with installations without payment of *any* compensation to Metra and, again, doing so without Metra's consent or coordination. That is a clear violation of 47 USCS § 253(c). Metra is entitled to and retains the right to seek the full amount of its license fees, but we do not understand what you are relying on to suggest that the specific license fees offered by Metra are not fair and reasonable. Your correspondence has suggested that the Illinois Commerce Commission has authority to rule on this issue. If you or your client has knowledge of any Illinois Commerce Commission order or action finding that Metra's license fees are unlawful, please advise. Metra is unaware of any such order or action.

As I stated in my October 14, 2025 correspondence to Eagle 1 and Metronet, please provide a list of any and all locations that Metronet and/or Eagle 1's other clients have installed fiber optic cable on Metra property without first obtaining approval from Metra to do so through a fully-executed License Agreement and Right of Entry Agreement. These installations are unauthorized and may jeopardize the safety of Metra's passengers and operations. **To be clear, Metronet and any of Eagle 1's other clients are to refrain from entering or utilizing Metra's right-of-way until License Agreements and Right of Entry Agreements are fully agreed upon and executed**

Allison Rule
November 18, 2025
Page 4

**by Metra, and the appropriate fees are paid. Please provide confirmation that neither Metronet nor any of Eagle 1's other clients (e.g., Clearwave, CCG, Clearwire) will proceed with the recently proposed installations without first obtaining approval from Metra to do so through a fully-executed License Agreement and Right of Entry Agreement.** If you refuse to comply with these demands, as well as those detailed in our October 14, 2025 letter, Metra will take every available legal action to enforce its rights and protect the safety of Metra's passengers and employees.

  This letter is written without any prejudice to any of Metra's rights and remedies, all of which are expressly reserved.

        Sincerely,

        *Thomas J. McDonell*

        Thomas J. McDonell

cc: Johnny Chuang, johnny.chuang@metronet.com