**EXHIBIT 5**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY D/B/A/ METRA, <br><br> Plaintiff, <br><br> v. <br><br> METRO FIBERNET, LLC AND EAGLE 1 RESOURCES, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.: |

## DECLARATION OF [ALVIN TERRY]

I, Alvin Terry, declare under penalty of perjury that the following is true and correct:

1. I am more than 18 years old. If called as a witness in the above-captioned matter, I could testify competently to the truth and accuracy of the facts set forth herein.

2. I am an employee of the Commuter Rail Division of the Regional Transportation Authority d/b/a/ METRA ("Metra"). I work as a Manager, Real Estate at Metra.

3. The facts set forth herein are from my own personal knowledge and from my review of business records kept in the ordinary course of business by Metra.

4. Over several decades, Metra acquired fee simple title to land located under Metra's Milwaukee District North Line right-of-way and rail tracks near Wilson Road in Ingleside, Illinois (the "Crossing").

5. Metra is the fee simple owner of the Crossing, and it has exclusive control of the Crossing, including all rights in the air above and ground below the surface of the Crossing.

6. Since 2022, Defendants have submitted letters to Metra for the purpose of gaining access to Metra property to have Metronet install fiber optic cable at nine separate rail crossings[1] (not including Eagle 1's other clients). Metra responded to each of those letters from Defendants explaining that the proposed installations, if performed without Metra's consent and coordination, would create a dangerous condition threatening the safety of the public, Metra's passengers, the safety of its employees, and threatening to cause an interruption of the furnishing of vital transportation. Until the discovery of Metronet's recent unauthorized installation and boring work performed at the Crossing under the cover of darkness, Metra had assumed that Defendants were not proceeding with installations of fiber optic cable on Metra property unless they had Metra's consent and authorization to do so.

7. On or about May 20, 2025, Defendant Eagle 1 sent Metra a letter on behalf of Defendant Metronet (the "Eagle 1 Letter"). The Eagle 1 Letter purported to provide statutory notice that Defendant Eagle 1's customer, Defendant Metronet, intended to install underground fiber optics cable at the Crossing on or about June 25, 2025. Defendants presumably sent the Eagle

---

[1] Metra is aware of at least nine separate locations that Metronet and Eagle 1 have submitted letters to Metra for the purpose of gaining access to install fiber optic cable from 2022 to the present, including:
- November 18, 2022, for Metro Fibernet LLC: South Western Ave, Bartlett, MD-W. MP 30.26, GPS 41.992832, -88.188810
- November 18, 2022, for Metro Fibernet LLC: Raymond St, Elgin, MD-W. MP 35.01, GPS 42.015575, -88.273190
- December 1, 2022, for Metro Fibernet LLC: McLean Blvd, Elgin, MD-W. MP 39.15, GPS 42.058146, -88.315195
- February 22, 2023, for Metro Fibernet LLC: County Farm Rd, Hanover Park, MD-W. MP 28.15, GPS 41.988155, -88.147221
- November 1, 2024, for Metro Fibernet LLC: Fairfield Rd, Round Lake, MD-N. MP 45.01, GPS 42.363621, -88.111527
- November 1, 2024, for Metro Fibernet LLC: Hart Rd, Round Lake, MD-N. MP 44.24, GPS 42.357192, -88.099286
- November 1, 2024, for Metro Fibernet LLC: Naperville Rd, Bartlett, MD-N. MP 31.87, GPS 42.000325, -88.218027
- November 19, 2024, for Metro Fibernet LLC: Prospect Ave, Bartlett, MD-W. MP 29.50, GPS 41.592766, -88.102630
- May 20, 2025, for Metro Fibernet LLC: Wilson Rd, Ingleside, MD-N. MP 46.62, GPS 42.373959, -88.139979

1 Letter to Metra to claim compliance with 65 ILCS § 5/11-42.11.1(f) by noting the date of the proposed installation, the manner and method of the proposed installation, the location of the proposed installation, a written agreement of indemnity, and a statement concerning safety.

8. Metra responded to the Eagle 1 Letter on June 4, 2025 (the "Metra Response Letter"). The Metra Response Letter unequivocally advised Defendants that they cannot use 65 ILCS § 5/11-42.11.1(f) to avoid paying standard license fees for using Metra property. Moreover, the Metra Response Letter made clear that Metra complies with the provisions of 47 U.S.C. § 253(c) by charging reasonable, neutral, and nondiscriminatory fees related to the managing of public-rights-of way as a unit of local government.

9. The Metra Response Letter again reminded Defendants that if they wished to install fiber optic lines on Metra's property, they must first fill out the appropriate forms and execute the appropriate agreements, just like every other company that seeks to install fiber optic cable on Metra's property. These agreements include a License Agreement and Right of Entry Agreement.

10. Defendants did not enter into a Right of Entry Agreement or License Agreement with Metra related to the Crossing prior to Metronet performing its installation of fiber optic cable at the Crossing.[2]

11. Metra has notified Eagle 1 and Metronet in numerous letters, including the Metra Response Letter, that Metra operates hundreds of commuters trains a day along its rail lines and has the obligation to exercise all available safety measures to reduce injury risk.

12. Defendants were, and are, aware that any unauthorized trespass, especially for construction or fiber optic cable installation, threatens the integrity of Metra's rail lines and

---

[2] Curiously, Metronet did submit wireline (License) application paperwork for 7 of the 9 the locations referenced in paragraph 6 n.1 above. Metra then produced License Agreements and sent drafts to Metronet for review and signature; however, they were never signed and returned.

exposes the commuting public and Metra's employees, as well as anyone working on the rail lines in any capacity, to the risk of serious bodily harm.

13. Defendants ignored Metra's repeated requests for Metronet to complete a License Agreement and Right of Entry Agreement prior to utilizing Metra's property.

14. Defendants did not notify Metra that Metronet would be completing an installation at the Crossing on or about September 13 or September 14, 2025.

15. Metronet and Eagle 1 have not denied that an installation occurred at the Crossing.

16. To date, Defendants have refused and/or ignored Metra's request for Defendants to identify all locations where Metronet has completed installation of fiber optic cable at other rail crossings on Metra property without Metra's consent.

17. Based upon prior experience and the history of communications with Eagle 1 and Metronet, Metra has reason to believe that Defendants have already or will, without Metra's consent or authorization, knowingly and surreptitiously attempt to install fiber optic cable on, under, and through additional rail crossings owned, operated, and/or controlled by Metra, thereby interfering with Metra's exclusive use and possession of its fee-owned property.

FURTHER AFFIANT SAYETH NOT.

*Alvin Terry*
Alvin Terry

Dated: December 9, 2025