**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY D/B/A/ METRA,<br><br>Plaintiff,<br><br>v.<br><br>METRO FIBERNET, LLC AND EAGLE 1 RESOURCES, LLC,<br><br>Defendants. | ) | Case No.: 25-cv-15045<br><br>Hon. Jorge L. Alonso, Presiding<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**SUPPLEMENTAL BRIEF REGARDING JURISDICTION**

Plaintiff, Commuter Rail Division of the Regional Transportation Authority d/b/a METRA ("Plaintiff" or "Metra"), for its Supplemental Brief regarding Jurisdiction, as requested by this Court, states as follows:

**INTRODUCTION**

On December 18, 2025, following oral argument on Metra's Emergency Motion for Temporary Restraining Order ("TRO"), this Court ordered supplemental briefing regarding jurisdiction. Defendant Eagle 1 Resources, LLC ("Eagle 1") appeared through counsel at the December 18, 2025 hearing and objected to the entry of a TRO based on an alleged lack of subject matter jurisdiction. Defendant Metro Fibernet, LLC ("Metronet") did not appear at the December 18, 2025 hearing, despite receiving proper service and notice of the Complaint and TRO on December 12, 2025, and receiving the Notice of Motion on December 17, 2025. Because Metra has sufficiently alleged subject matter jurisdiction, this Court has jurisdiction to enter a TRO against Eagle 1 and Metronet.

## ARGUMENT

### I. Diversity Jurisdiction

Based on publicly available documents and an extensive search conducted by undersigned counsel, Metra is reasonably certain that no members of Metronet are citizens of Illinois, even when drilling into the members of Metronet's members, the members of those members, and so on. The sole member of Metronet is Metronet Devco Borrower, LLC. *See* **Exhibit 1**, September 10, 2025 Filing from the State of New Jersey Board of Public Utilities. Metronet Devco Borrower, LLC, in turn, is 100% owned by Metronet Systems Holdings, LLC. *See* **Exhibit 2**, Texas Franchise Tax Public Information Report completed by Metronet Devco Borrower, LLC. According to a July 9, 2025 Public Notice from the Federal Communications Commission, the two members of Metronet Systems Holdings, LLC—following a recent acquisition by a joint venture—are T-Mobile USA, Inc. and Metronet Vexus Holdings, Inc. *See* **Exhibit 3**, Public Notice regarding Transfer of Control of Subsidiaries from Metronet Holdings, LLC to Metronet Systems Holdings, LLC. Both T-Mobile USA, Inc. and Metronet Vexus Holdings, Inc. are corporations incorporated in the state of Delaware. *Id*. T-Mobile USA, Inc. has its principal place of business in Washington and Metronet Vexus Holdings, Inc. has its principal place of business in Indiana.

Metra has made a reasonable, diligent effort to determine Metronet's citizenship based on Metronet's public statements and filings. Because certain documents such as LLC operating agreements are not publicly available and some states (including Delaware) do not require public disclosure of LLC members, however, Metra cannot be 100% certain of the citizenship of Metronet's members without confirmation from Metronet. *See, e.g., Qin v. Deslongchamps*, 31 F.4th 576, 579 (7th Cir. 2022) (some states permit members to be

anonymous, and even in states that do not, members are often not easily determined); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 209 (3d Cir. 2015) ("[t]he membership of an LLC is often not a matter of public record"). Undersigned counsel spoke with in-house counsel for Metronet regarding this litigation as recently as December 18, 2025 (following the hearing on Metra's TRO). Metronet is aware of the lawsuit and in the process of obtaining outside counsel. Still, as of the time of this filing, Metronet has not responded to Metra's request to confirm the citizenship of Metronet's member(s) (and their member(s) and so on).

Some courts have addressed similar situations by allowing plaintiffs to plead the facts necessary for diversity jurisdiction in the negative (*i.e.*, after a good faith investigation, the plaintiff believed that no defendant was a citizen of plaintiff's state). *See, e.g.*, *Lincoln Ben. Life Co.*, 800 F.3d at 110 (plaintiff did not have to affirmatively allege citizenship of each member of defendant LLC if it was unable to do so after reasonable investigation and could instead allege in good faith that defendant LLC's members were not citizens of the same state as plaintiff). Here, based on the research cited above and attached hereto, Metra has no reason to believe that any of Metronet's member(s) (and their member(s), anywhere along the chain) are citizens of Illinois. As the Third Circuit explained in *Lincoln Ben. Life Co.*:

> If, after this [reasonable] inquiry, the plaintiff has no reason to believe that any of the association's members share its state of citizenship, it may allege complete diversity in good faith. The unincorporated association, which is in the best position to ascertain its own membership, may then mount a factual challenge by identifying any member who destroys diversity…
>
> Depriving a party of a federal forum simply because it cannot identify all of the members of an unincorporated association is not a rational screening mechanism. The membership of an LLC is often not a matter of public record. Thus, a rule requiring the citizenship of each member of each LLC to be alleged affirmatively *before* jurisdictional discovery would effectively

> shield many LLCs from being sued in federal court without their consent. This is surely not what the drafters of the Federal Rules intended.

*Lincoln Ben. Life Co.*, 800 F.3d at 108-109 (emphasis in original).

The Seventh Circuit has also recognized the inherent difficulties with requiring a plaintiff to identify all the members of a defendant LLC. In *Qin v. Deslongchamps*, 31 F.4th 576 (7th Cir. 2022), the Seventh Circuit noted that "[e]ven in states that do not formally permit anonymous LLCs, it can be challenging to ascertain the citizenship of the LLC's members from publicly available sources, particularly when the membership roster includes additional LLCs or other non-corporate entities." *Id*. at 579. The Court went on to explain that "in states where the members of the LLC need not be publicly identified, it can be difficult if not impossible for a prospective plaintiff to ascertain the membership and in turn determine whether he can sue the LLC in diversity." *Id*. Importantly, though, in response to the practical difficulties routinely experienced by plaintiffs suing LLCs, on Dec. 1, 2022, Federal Rule of Civil Procedure 7.1 was updated to require parties or intervenors in a diversity case to file a disclosure statement that must "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party or intervenor." Fed. R. Civ. P. 7.1(a)(2). The advisory committee notes for the amended rule state that the new disclosure obligations are meant to assist the court in determining whether diversity jurisdiction exists when a plaintiff suing an LLC "may not have all the information it needs to plead the LLC's citizenship." Fed. R. Civ. P. 7.1, Advisory Committee Notes—2022 Amendment.

Here, Metra has sufficiently and in good-faith alleged diversity of citizenship following a reasonable investigation into the LLC membership of Metronet. Moreover, once Metronet appears in the case, it is required under the amended FRCP 7.1 to file a

disclosure statement identifying the citizenship of every individual or entity whose citizenship is attributable to Metronet. Thus, Metronet's disclosure statement should conclusively resolve any outstanding questions on Metronet's citizenship.[1] The Committee Notes on the 2022 Amendment show that the present situation with Metronet's citizenship is a prime example of why the Rule was updated:

> A familiar example is a limited liability company, which takes on the citizenship of each of its owners. **A party suing an LLC may not have all the information it needs to plead the LLC's citizenship…Pleading on information and belief is acceptable at the pleading stage**, but disclosure is necessary both to ensure that diversity jurisdiction exists and to protect against the waste that may occur upon belated discovery of a diversity-destroying citizenship.

*Id*. (emphasis added).

But the practical effect of Metronet delaying filing its appearance and disclosure statement, despite acknowledging receipt of the Complaint and Emergency Motion for TRO, is an attempt to deny Metra the TRO relief it is entitled to in federal court—without even appearing in court. Even though Metronet knows the citizenship of its members (and would presumably object to allegations of diversity of citizenship if there was not complete diversity), it seeks to deprive Metra of its choice of forum for a TRO by simply waiting Metra out. Defendants' position appears to be that Metra should seek a TRO in state court, all while Metronet purposefully withholds information regarding Metronet's members that would conclusively establish Metra's right to be in federal court via diversity jurisdiction, thereby denying this Court an opportunity to resolve this emergency issue. Courts, however,

[1] In its research, Metra found a corporate disclosure statement filed by Metronet in the United States District Court for the District of Colorado on January 22, 2025. *See* **Exhibit 4**. Unfortunately, that disclosure statement does not shed light on the full LLC membership structure of Metronet and only states the following: "Plaintiff Metro Fibernet, LLC states that it is an indirect, wholly-owned subsidiary of Metronet Holdings, LLC. Metro Fibernet, LLC further states that no publicly held corporation own 10% or more of its stock." Moreover, the reference to Metronet Holdings, LLC may be outdated given the transaction referenced in Ex. 3 above.

have rejected similar attempts by defendants to bolster their positions by sitting back and refusing to challenge jurisdictional allegations. *See, e.g., Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010) (diversity jurisdiction deemed proper at that point in the litigation where the defendants, who the court deemed to be in the best position to furnish evidence of their citizenship, had declined to challenge the factual basis of the plaintiff's jurisdictional allegations). In *Med. Assur. Co. v. Hellman*, the Seventh Circuit explained that the defendant "has not participated in any of these proceedings, and thus has not proffered any evidence contradicting the position of [plaintiff] that the claimants are all citizens of Indiana or Illinois—and that none is a citizen of Alabama." *Id*. at 376. Notably, the Court held that "[t]his is enough for now; obviously, if information to the contrary emerges on remand, the district court must stand ready to re-evaluate its jurisdiction." *Id*. Similarly, Metra has sufficiently pled diversity jurisdiction and Metronet has to date refused to challenge that jurisdiction—should Metronet come forward (through its disclosure statement or otherwise) with contrary information, this Court may always re-evaluate its jurisdiction. But given the significant public safety risks that the TRO seeks to prevent, Metronet's current refusal to come forward should not outweigh the Court's ability to grant immediate relief through a TRO, especially when ample information on Metronet's members is already provided in this Supplemental Brief.

In a similar Northern District of Illinois case where diversity jurisdiction was at issue and a party had raised concerns about being "force[d]…to file its action in state court only to refile in [federal court] if diversity does exist," the district court ultimately allowed limited jurisdictional discovery. *Zurich American Insurance Company v. Tangiers International LLC*, 2018 WL 3770085, *2 (N.D. Ill. August 9, 2018). "Other courts have similarly recognized that limited jurisdictional discovery may be warranted where a

plaintiff is unable to obtain information as to the membership of an LLC." *Id*., citing *Kehrer Bros Const. v. Custom Body Co.*, 2007 WL 1183970 (S.D. Ill. April 20, 2007) (allowing plaintiff to correct identified jurisdictional deficiencies but advising that "if unable to plead with certainty the membership and citizenship of each defendant LLC, [plaintiff] should instead file a memorandum…requesting the opportunity to conduct limited jurisdictional discovery in order to determine whether diversity of citizenship exists"); *250 Lake Ave. Assocs., LLC v. Erie Ins. Co.*, 281 F. Supp. 3d 335, 341 (W.D.N.Y. 2017) (granting leave to amend notice of removal to cure defective allegations of citizenship and advising that "if Defendant lacks sufficient information to assert those allegations, it may seek leave from this Court to conduct jurisdictional discovery to ascertain the citizenship of Plaintiff's members).

While Metra still maintains that it has adequately alleged diversity jurisdiction, if this Court does not believe Metra has met its burden, then the Court should require Metronet to submit a statement identifying the citizenship of each of its members (to the extent Metronet's Rule 7.1 disclosure statement is not already filed and does not provide that information). *See Johnson v. Nat'l Asset Advisors, LLC*, 772 F. App'x 328 (7th Cir. 2019) (detailing the steps the Seventh Circuit took to ascertain citizenship information, including through various supplemental filings from the Defendant); *Braun v. City of McHenry*, No. 21 C 50003, 2022 WL 523127, at *5 (N.D. Ill. Feb. 22, 2022) (holding a Court may order a party to disclose its citizenship to satisfy itself that subject-matter jurisdiction is present).

**II. Federal Question Jurisdiction**

This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 relating to civil actions arising under the laws of the United States due to the parties' dispute over the interpretation of the federal Communications Act. Section 253(c) of that Act states: "Nothing in this

section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government." 47 U.S.C. § 253(c).

Defendants cannot deny that an interpretation of whether Metra's license fees are "fair and reasonable compensation" under 47 U.S.C. § 253(c) is at the very heart of this litigation and provides the basis for a portion of Metra's damages—namely, license fees that Metra is owed following the unauthorized use of Metra's property. Typically, every telecommunications provider follows Metra's standard process and guidelines by completing a Right of Entry Agreement and License Agreement prior to installing fiber optic cable on Metra's property. But, here, Metronet has decided to proceed with installations (on Eagle 1's advice) without following Metra's applicable safety guidelines and without paying *any* fees to Metra because Defendants do not deem Metra's standard fees to be "fair and reasonable compensation" under 47 U.S.C. § 253(c). Thus, the reason that Metronet proceeded with the authorized installations in the first place that form the basis of this lawsuit is a disagreement over the interpretation of a federal statute—47 U.S.C. § 253.

The correspondence between the parties and exhibits to the Complaint and Motion for TRO—including the Alvin Terry Declaration (Ex. 2 to Complaint), Metra's June 4, 2025 Letter (Ex. 5 to Complaint), Eagle 1's November 5, 2025 Letter (Ex. 10 to Complaint), and Metra's November 18, 2025 Letter (Ex. 3 to Motion for TRO)—all refer to an underlying dispute over the interpretation "fair and reasonable compensation" under 47 U.S.C. § 253. As Metra explained in its November 18, 2025 Letter to Defendants, "[W]e

disagree with your contention that Metra's license fees are "exorbitant" and 'have the effect of prohibiting [Eagle 1's clients] to provide any interstate or intrastate telecommunications service.' Pursuant to 47 U.S.C. § 253(c), Metra's license fees are competitively neutral, nondiscriminatory, fair, and reasonable." Eagle 1's position, on the other hand, is that "[under Section 253(a)], [t]he imposition of excessively high fees and onerous procedural hurdles undoubtedly has the effect of prohibiting the provision of much needed communications services to the citizen of Illinois." Eagle 1's November 5, 2025 Letter (Ex. 10 to Complaint).

In *TowerNorth Development, LLC, et al. v. City of Geneva*, 2023 WL 638257 (N.D. Ill. September 30, 2023), the Northern District of Illinois noted that "[w]hether a private right exists to enforce 47 U.S.C. § 253 has been litigated in other circuits in the past and presents a difficult question." *Id*. at *6. There, the Court appeared to agree with the Eleventh Circuit's analysis that no private right of action existed under Section 253(a) (which bans state or local laws that can prohibit the ability of an entity to provide telecommunications service) but a private cause of action does exist with respect to 253(c) (which allows local governments to require reasonable compensation from telecommunications providers). *Id*. at *6-7. In Judge Pallmeyer's analysis of Section 253(c), she emphasized that "[o]f particular importance in the fee context, Section 253(c) reflects a considered policy judgment that "[n]othing in this section" shall prevent states and localities from recovering certain carefully delineated fees." *Id*. at *9.

A further explanation of Section 253(c) was provided by the District Court of Oregon in *City of Portland v. Electric Lightwave, Inc.*, 452 F. Supp. 2d 1049 (D. Or. 2005). There, the City of Portland sued a telecommunications provider for failing to pay franchise fees and the telecommunications provider objected—just as Defendants have here—by

claiming that the fees have the effect of prohibiting telecommunications services under 47 U.S.C. § 253. *Id*. The District Court of Oregon held that:

> As a threshold matter, the court is reminded that section 253(c) is not an independent substantive prohibition that operates to limit the City's right to receive compensation for use of its rights of way. Rather, it is well-established that section 253(c) is a "safe harbor" that provides "even if" relief for the cities. Subsection (c) is not a limit on state and local government regulatory authority. See City of Eugene, 177 Or.App. at 406, 35 P.3d 1029 (Court concluded that city's requirement that telecommunications providers pay a fee for use of city property did not bar entry.). Thus, section 253 preempts rights of way fees only if they would effectively prohibit provision of a telecommunications service and, even then, such fees are not preempted by section 253(c) if they qualify as fair and reasonable compensation for use of the rights-of-way.

*Id*. at 1070; *see also New Mexico Gas Company v. Board of County Commissioners of Bernalillo County, New Mexico*, 423 F. Supp. 3d 1190 (D.N.M. 2019) (telecommunications services provider failed to show that fee provisions of county ordinance, which required utilities with facilities and equipment in the public right-of-way to pay annual right-of-way use fees or "franchise fees," materially inhibited its provision of telecommunication services).

For all these reasons, the Court's interpretation and analysis of 47 U.S.C. § 253 will be central to the litigation including the determination of Metra's damages. The issues and parties' disputed positions of "fair and reasonable compensation" under Section 253(c) are pled through the Complaint and its exhibits. Defendants should not be permitted to circumvent a federal court's analysis of a federal statute. In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), for example, the U.S. Supreme Court held that a claim nominally resting on state law may "arise under" federal law when it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved

balance of federal and state judicial responsibilities." *Id*. at 314. Just as in *Grable*, the resolution of this suit will revolve around a particular disputed issue of federal law.

## CONCLUSION

Because Metra has sufficiently alleged subject matter jurisdiction, Metra respectfully requests that this Court grant its Emergency Motion for Temporary Restraining Order.

Dated: December 19, 2025

Respectfully submitted,

**Commuter Rail Division of the Regional Transportation Authority d/b/a METRA**

By: */s/ Thomas J. McDonell*

Christopher N. Skey (ARDC #6243906)
Thomas J. McDonell (ARDC #6317275)
Taylor R. Rioux (ARDC #6350076)
QUARLES & BRADY LLP
155 North Wacker Drive, Suite 3200
Chicago, Illinois 60606
(312) 715-5000
Christopher.Skey@quarles.com
Thomas.McDonell@quarles.com
Taylor.Rioux@quarles.com